# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 5:01CR30075-001 |
| v. | ) | **OPINION AND ORDER** |
| **RICHARD LEROY FULTON,** | ) | By: James P. Jones<br>United States District Judge |
| Defendant. | ) | |

*Lisa M. Lorish, Assistant Federal Public Defender, Charlottesville, Virginia, for Defendant.*

The defendant, Richard Leroy Fulton, has filed a Motion for Specific Performance of Plea Agreement. Fulton argues that the government breached his plea agreement's provision that he "shall be held responsible for . . . more than 1.5 KG of cocaine base" when it argued that well over 25 kilograms of cocaine base were attributed to him, and therefore he is ineligible for a sentence reduction pursuant to Amendment 728 to the U.S. Sentencing Guidelines. For the reasons that follow, I find that the government did not breach the plea agreement, and I will deny the motion.

I.

On October 25, 2002, Fulton pleaded guilty to conspiring to distribute and possess with the intent to distribute more than 50 grams of cocaine base and

possessing a firearm after being convicted of a felony. In the plea agreement, Fulton and the government agreed "for purposes of Guideline Sections 2D1.1 and 1B1.3, that [Fulton] shall be held responsible for conspiring to distribute and distributing more than 1.5KG of cocaine base." Plea Agreement 3, ECF No. 108-1.

Fulton's Presentence Investigation Report ("PSR") determined that because "at least 1.5 kilograms" of cocaine base had been attributed to him, he had a base offense level of 38. PSR ¶ 13, ECF No. 90. The PSR's description of Fulton's offense conduct stated that "[n]umerous co-conspirators indicated that Fulton routinely traveled to New York on at least a weekly basis where he purchased between 500 and 750 grams of cocaine hydrochloride." PSR ¶ 8. He continued this conduct for well over a year, making him responsible for the distribution of "well over 25 kilos of cocaine base." PSR ¶ 8.

On May 16, 2003, Fulton was sentenced to 360 months imprisonment. The Judgment entered in Fulton's case indicates that the court adopted the factual findings in the PSR. In its Statement of Reasons, the court stated that the "[d]efendant has an extensive criminal history, and was the leader of conspiracy, that was responsible for over 25 kilos of cocaine base." J. 8, ECF No. 55.

On January 21, 2019, Fulton filed a Motion for Reduction of Sentence pursuant to Amendment 782 to the Sentencing Guidelines. In its response to the

motion, the government argued that because over 25 kilograms of cocaine base had been attributed to Fulton in his PSR, the amendment does not have the effect of lowering his sentencing guideline range, and thus he is ineligible for a sentence reduction. I agreed with the government and found Fulton ineligible for a reduced sentence. Op. & Order, May 1, 2019, ECF No. 109.

Following the government's response to his motion for a reduced sentence, Fulton filed the present motion.

## II.

Fulton contends that the government's argument that he was responsible for well over 25 kilograms of cocaine base in its response to his motion for a reduced sentence was a breach of his plea agreement's provision that he "shall be held responsible for . . . more than 1.5 KG of cocaine base." Plea Agreement 3, ECF No. 108-1. He argues that the Fourth Circuit's decision in *United States v. Edgell*, 914 F.3d 281 (4th Cir. 2019), supports this contention.

"When interpreting plea agreements, we draw upon contract law as a guide to ensure that each party receives the benefit of the bargain, and to that end, we enforce a plea agreement's plain language in its ordinary sense." *United States v. Warner*, 820 F.3d 678, 683 (4th Cir. 2016) (internal quotation marks and citation omitted).

To illustrate, in the plea agreement at issue in *United States v. Edgell*, the parties had stipulated that the defendant was responsible for distributing "less than five (5) grams of substances containing a detectable amount of methamphetamine," which corresponded to a sentencing guideline range of 10 to 16 months, and that the government would recommend a sentence at the lowest end of the applicable guideline range. 914 F.3d at 285. After the agreement was signed, the government received drug analysis results showing that the substance at issue was actual methamphetamine rather than a substance containing methamphetamine, and it submitted this analysis to the probation office. *Id.* Based on the analysis, the probation office calculated the defendant's sentencing range to be 30 to 37 months. *Id.* At sentencing, the government advocated for a sentence at the low end of this 30-to-37-month range. *Id.* The Fourth Circuit held that the government breached its plea agreement by requesting a sentence that was inconsistent with its stipulation as to the defendant's drug conduct. *Id.* at 288.

The plain language of Fulton's plea agreement states, in relevant part, that he "shall be held responsible for . . . *more than* 1.5 KG of cocaine base." Plea Agreement 3, ECF No. 108-1 (emphasis added). In its ordinary sense, this language permits holding Fulton responsible for an amount of cocaine base greater than 1.5 kilograms. Thus, unlike in *Edgell*, the government has not requested a sentence inconsistent with its stipulation as to Fulton's drug conduct — a sentence

based on more than 25 kilograms of cocaine base is consistent with holding Fulton responsible for *more than* 1.5 kilograms of cocaine base.

III.

Accordingly, it is hereby **ORDERED** that the Motion for Specific Performance of Plea Agreement, ECF No. 107, is DENIED.

ENTER: May 20, 2019

/s/ *James P. Jones*
United States District Judge